IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Rosetta Green,                    )      Civil Action No. 8:12-2241-DCN-JDA
                        Plaintiff, )
                                  )
        vs.                       )      **REPORT AND RECOMMENDATION**
                                  )      **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]             )
Commissioner of Social Security,  )
                                  )
                       Defendant. )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income

("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the

Commissioner be reversed and remanded for administrative action consistent with this

recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

        On July 27, 2009, Plaintiff protectively filed applications for DIB [R. 157-163] and

SSI [R. 164-166], alleging an onset of disability date of June 9, 2008.  [R. 157, 164.]

---

        [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J.
Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last
sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

        [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a
hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the
same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C.
§ 1383(c)(3).

Plaintiff's claims were denied initially on December 2, 2009 [R. 105-09], and on reconsideration on June 22, 2010 [R. 114-15, 116-17] by the Social Security Administration ("the Administration"). Plaintiff requested a hearing before an administrative law judge ("ALJ") and on November 9, 2010, ALJ Edward T. Morriss conducted a de novo hearing on Plaintiff's claims. [R. 68-96.]

The ALJ issued a decision on January 20, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 51-61.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity[4] during the period from her alleged onset date of June 9, 2008. [R. 53, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had a severe impairment, namely a back disorder. [R. 53 , Finding 3.] The ALJ also found Plaintiff had been diagnosed with obesity and atrial fibrillation, but that these impairments were non-severe. [*Id.*] Further, the ALJ noted Plaintiff's medically determinable mental impairments of depression and borderline intellectual functioning and also found these to be non-severe. [*Id.* at 54.]

At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 55, Finding 4.] The ALJ specifically considered Listing 1.00 with respect to Plaintiff's back disorder but found no evidence of

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[4]The ALJ noted that, "[p]rior to her date last insured, the claimant worked part-time as a cashier. The claimant testified that she quit her work as a cashier not because she could not perform the work, but because they would not increase her hours." [R. 14.]

nerve root compression, spinal arachnoiditis, spinal stenosis resulting in pseudoclaudication, any sensory, motor or reflex loss, or an inability to ambulate or perform fine and gross movements effectively as these terms are defined in the listing. [R. 55.] The ALJ also considered Listing 12.00C with respect to Plaintiff's depression and borderline intellectual functioning, but found that "paragraph B" criteria were not satisfied. [*Id*.] Moreover, the ALJ considered the combined effects of Plaintiff's impairments, both severe and non-severe, and determined that the findings related to them are not at least equal in severity to those described in Listings 1.00 or 12.00. [*Id*.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally.

[R. 55, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work. [R. 60, Finding 6.] Considering the Plaintiff's age, education, work experience, and residual functional capacity, however, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [R. 60, Finding 10.] Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from June 9, 2008, the alleged onset date, through the date of the decision. [R. 60, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.[5] [R. 1-5.]   Plaintiff filed this action for judicial review on August 7, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ

1.   failed to find Plaintiff's depression a severe impairment [Doc. 24 at 14-16];

2.   failed to properly weigh the opinion of treating and examining physicians regarding the nature and severity of Plaintiff's impairments [*id.* at 17-22];

3.   erred in his findings regarding Plaintiff's RFC [*id.* at   17-22];

4.   erred in relying solely on the GRIDS to direct a finding that Plaintiff was not disabled in light of Plaintiff's non-exertional impairment  [*id.* at 22-24]; and,

5.   failed to carry his burden of proving there are significant jobs in the national economy Plaintiff can perform [*id.* at 24].

Plaintiff also contends that the Appeals Council erred by failing to consider new, material evidence relating to the period prior to the ALJ's decision. [*Id.* at 25-27.]

---

[5] The Appeals Council received the following evidence and made it part of the record:  Exhibit 19E (Brief dated May 25, 2012 from Amrita  Maharaj); Exhibit 20E (Undated Brief from Nowell S. Lesser); and Exhibit 27F (Medical evidence dated August 4, 2010 through January 25, 2011 from Lowcountry Orthopaedics).  [R. 5.]  The Appeals Council concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision."  [R. 2.] Specifically, the Appeals Council explained:

> We also looked at medical evidence dated March 22, 2011 through May 10, 2011 from Lowcountry Orthopaedics; an undated medical source statement from Stephen Miller, M.D.; evidence dated May 24, 2011 through March 3, 2012 from Colleton Medical Center; May 10, 2011 from William E. Wilson, Esq; and October 4, 2011 through April 15, 2011 from William Wilson, M.D.

> The Administrative Law Judge decided your case through January 20, 2011. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 20, 2011. We are returning this evidence to you.

[*Id.*]

4

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because

1.   Plaintiff failed to demonstrate that her depression was severe [Doc. 26 at 10];

2.   the ALJ properly weighted the medical source opinions of record and reasonably discounted opinions that were unsubstantiated or inconsistent with the record evidence [*id*. at 13-19]; and,

3.   the ALJ permissibly used the GRIDS to direct his finding of not disabled when Plaintiff failed to show the presence of any non-exertional limitations [*id*. at 19-21].

Additionally, the Commissioner contends the Appeals Council appropriately declined to consider the additional evidence submitted by Plaintiff as it was duplicative of evidence already contained in the record.   [*Id*. at 21-23.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6]  With remand under sentence

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

9

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a

10

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

---

[7]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

11

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's RFC[8] with the physical and mental demands of the kind of work she has done in the past to determine whether the claimant has the RFC to do her past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g); 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional

---

[8] RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[9] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

14

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

15

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

16

Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician Opinions /Residual Functional Capacity**

Plaintiff contends the ALJ erred in evaluating the opinions of Plaintiff's treating physicians with respect to her functional limitations by mischaracterizing and improperly weighing the opinion of Dr. Netherton.  [Doc. 24 at 19-20.] Specifically, Plaintiff contends Dr. Netherton's opinion on her work capabilities predated Plaintiff's July 21, 2010  MRI

which "revealed significant new abnormal findings." [*Id.* at 19.]   Additionally, Plaintiff contends the ALJ failed to consider and address Dr. Rittenberg's opinions and, thus, the RFC assessment is not based on all relevant evidence in the record. [*Id.* at 21.]

Conversely, the Commissioner contends the ALJ properly weighed the opinions of the treating physicians and the ALJ's failure to assign weight to Dr. Rittenberg's findings is harmless error as the findings do not contravene the ALJ's finding that Plaintiff can perform sedentary work.   [*Id*. at 13-19 and fn 6.]

### *Weight Assigned to Treating Physician Opinions*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (citing 20 C.F.R. § 404.1527).   Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id*. (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).  *Id.*

However, the opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96–2p requires that an ALJ

give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported
> by medically acceptable clinical and laboratory diagnostic techniques or is
> inconsistent with the other substantial evidence in the case record means
> only that the opinion is not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are still entitled to
> deference and must be weighed using all of the factors provided in 20 C.F.R.
> 404.1527 and 416.927. In many cases, a treating source's opinion will be
> entitled to the greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an individual who
> has applied for title II or title XVI disability benefits is "disabled" or "unable to
> work," or make similar statements of opinions. In addition, they sometimes
> offer opinions in other work-related terms; for example, about an individual's
> ability to do past relevant work or any other type of work. Because these are
> administrative findings that may determine whether an individual is disabled,
> they are reserved to the Commissioner.  Such opinions on these issues must
> not be disregarded. However, even when offered by a treating source, they
> can never be entitled to controlling weight or given special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

   In any instance, an ALJ's failure to explain the weight given to a treating physician

opinion is ground for remand because, without sufficient explanation, the reviewing court

cannot determine whether substantial evidence supports the ALJ's decision.  *Koonce v.*

*Apfel*, 1999 WL 7864, at *2 (4th Cir. Jan.11, 1999) (stating an ALJ's determination as to

20

the weight assigned to a medical opinion generally will not be disturbed unless the ALJ "has not given good reason for the weight afforded to a particular opinion" or "dredged up 'specious inconsistencies' "); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983) (reversing and remanding due to the ALJ's failure to explain why he disregarded the treating physicians' opinions).

### ALJ's Assignment of Weight

#### 1.    *Dr. Rittenburg's Opinion*

Dr. Charles Rittenberg performed a consultative orthopedic examination of Plaintiff on November 16, 2009. [R. 411-414.] Dr. Rittenburg noted that, on examination, Plaintiff demonstrated decreased range of motion of the cervical and lumbar spine, and mild to moderate tenderness to palpation of the neck, low back, and sciatic areas. [R. 411, 414.] He also noted that Plaintiff had full range of motion of all joints in all four extremities, except for decreased flexion in both knees. [R. 414.] Dr. Rittenberg observed that there was no tenderness to palpation of any joint, inflammation, swelling, or deformity, and no sensory or motor deficits in any extremity; and that deep tendon reflexes and peripheral pulses were normal and equal in all extremities. [R. 412, 414.] Although straight leg raising was negative bilaterally, and Plaintiff ambulated with an unsteady gait favoring her left leg, Dr. Rittenberg noted that Plaintiff was able to walk across the room without an assistive device. [R. 414.] Her gait, however, improved with a cane. [R. 412, 414.] Dr. Rittenberg diagnosed Plaintiff with degenerative disc disease of the lumbar spine and possibly the cervical spine, depression, anxiety, obesity, and possible atrial fibrillation controlled with medications. [R. 414.] Dr. Rittenberg opined that chronic pain, depression, and anxiety would limit Plaintiff's activities of daily living and work activity. [R. 414.]

21

The ALJ discussed Dr. Rittenberg's opinion in his decision but never assigned the opinion any weight or discussed his acceptance of or objection to Dr. Rittenberg's findings. [*See* R. 58.]  In fact, while the ALJ's decision discusses Plaintiff's depression ("claimant's medically determinable mental impairments of depression and borderline intellectual functioning ("BIF") do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities" [R. 54]), the ALJ's findings regarding Plaintiff's pain complaints ("[t]he fact that neck and back pain did not prevent the claimant from working [prior to the alleged onset date] strongly suggests they would not currently prevent work." [R. 57]) contradict Dr. Rittenburg's findings. Because the ALJ failed to explain his rejection of Dr. Rittenberg's opinion, the Court cannot find that his decision is supported by substantial evidence.

### 2.    Drs. Washington, Wilson, and Netherton's Opinions

The ALJ gave great weight to the opinion of Dr. Netherton, who treated Plaintiff from April 2009 to January 2010, and found that Plaintiff could perform sedentary work but hat her degeneration would likely worsen over time.  [R. 59.]   The ALJ gave little weight to the opinion of Dr. Wilson, who examined Plaintiff in August 2010, and opined that she was a good candidate for disability. [*Id.*]  The ALJ based this weight assignment on "the length of [Dr. Wilson's] treating relationship with the claimant, the frequency of his examination of the claimant, medical evidence in support of his opinions, and the consistency of his medical opinions with the record as a whole."  [*Id.*]  Additionally, the ALJ gave little weight to the opinion of Dr. Washington, who concurred with Dr. Wilson and opined that, "due to her chronic back and leg pain, she would need to rest and/or take breaks as needed in order to complete an 8 hour work day and would miss more than 4 days per month." [*Id.*]

The ALJ based this weight on the fact that Dr. Washington's notes "consistently show musculoskeletal examinations and motor function as normal." [*Id*. at 59-60.]

Contrary to the regulations, the ALJ discounted the opinions of Drs. Washington and Wilson, but did not cite to any contradictory medical reports by an examining or treating physician. *See* SSR 96–2p (if a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]")   Additionally, while Dr. Washington's treatment notes indicated normal motor function, his notes also make reference to: "moderate to severe right and moderate left neural foraminal narrowing...disc protrusion contract[ing] the traversing right S1 nerve root and the neural foraminal narrowing abuts the exiting right L5 nerve root" [R. 499]; swelling localized to one or more joints [R. 527]; cervical spine abnormalities and mid-back pain [R. 528]; sensory exam abnormalities [R. 530];and chronic pain and depression [R. 546].  While the ALJ pointed out the notes that supported his decision, he failed to address the notes made by Dr. Washington that may not be consistent with his findings.  "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Because the ALJ does not explain why Dr. Washington's treatment notes contradict his opinion, the Court can not find the ALJ's decision is supported by substantial evidence.

As this case is being remanded to explain the weight assigned to Dr. Rittenberg's opinion, the ALJ should also properly conduct an analysis of Dr. Wilson's and Dr. Washintons' opinions and discuss any contradictory medical evidence from other treating and/or examining physicians that he relied on to discount their opinions.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain his weighing of the medical evidence is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 4, 2014
Greenville, South Carolina